# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**FREDDIE MUNGEN, CHRISTIAN MATTILA, and KEVIN BERRIOS,**

      **Plaintiffs,**

v.                                                              Case No:   6:17-cv-362-Orl-37GJK

**LOYAL SOURCE GOVERNMENT SERVICES, LLC,**

      **Defendant.**

___

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion:

> **MOTION:** **PARTIES' RENEWED JOINT MOTION AND MEMORANDUM OF LAW FOR APPROVAL OF SETTLEMENT AGREEMENT (Doc. No. 40)**
>
> **FILED:** March 14, 2018
>
> ___
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

### I. BACKGROUND.

On March 2, 2017, Plaintiff Freddie Mungen filed a collective action complaint against Defendant, alleging that it violated the overtime provisions of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 207(a). Doc. No. 1. Subsequently, Kevin Berrios and Christian Mattila joined the litigation as party plaintiffs. Doc. Nos. 12, 25. On March 14, 2018, the parties filed a Renewed Joint Motion and Memorandum of Law for Approval of Settlement Agreement (the "Motion") requesting that the Court approve their settlement agreement (the "Agreement") and

dismiss the case with prejudice.[1] Doc. No. 40.

## II. LAW.

In *Lynn's Food Stores, Inc. v. United States Department of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982), the Eleventh Circuit addressed the means by which an FLSA settlement may become final and enforceable:

> There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them . . . . The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

Thus, unless the parties have the Secretary of Labor supervise the payment of unpaid wages owed or obtain the Court's approval of the settlement agreement, the parties' agreement is unenforceable. *Id.*; *see also Sammons v. Sonic-North Cadillac, Inc.*, No. 6:07-cv-277-Orl-19DAB, 2007 WL 2298032, at *5 (M.D. Fla. Aug. 7, 2007) (noting that settlement of FLSA claim in arbitration proceeding is not enforceable under *Lynn's Food* because it lacked Court approval or supervision by the Secretary of Labor). Before approving an FLSA settlement, the Court must scrutinize it to determine if it is a fair and reasonable resolution of a bona fide dispute. *Lynn's Food Store*, 679 F.2d at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement. *Id.* at 1354.

In determining whether the settlement is fair and reasonable, the Court should consider the following factors:

---

[1] On March 7, 2018, the Court denied the parties' original motion for approval of the Agreement due to a lack of information regarding Mattila's FLSA claim and the extent that the claim was compromised. Doc. No. 39 at 2-4.

> (1) the existence of collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of plaintiff's success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of counsel.

*Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.*, No. 6:05-cv-592-Orl-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007), *report and recommendation adopted*, 2007 WL 219981 (M.D. Fla. Jan. 26, 2007). The Court should be mindful of the strong presumption in favor of finding a settlement fair. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).[2]

In FLSA cases, the Eleventh Circuit has questioned the validity of contingency fee agreements. *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (citing *Skidmore v. John J. Casale, Inc.*, 160 F.2d 527, 531 (2d Cir. 1947) ("We have considerable doubt as to the validity of the contingent fee agreement; for it may well be that Congress intended that an employee's recovery should be net[.]")). In *Silva*, the Eleventh Circuit stated:

> That Silva and Zidell entered into a contingency contract to establish Zidell's compensation if Silva prevailed on the FLSA claim is of little moment in the context of FLSA. FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement. FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions. *See Lynn's Food*, 679 F.2d at 1352 ("FLSA rights cannot be abridged by contract or otherwise waived.") (quotation and citation omitted). To turn a blind eye to an agreed upon contingency fee in an amount greater than the amount determined to be reasonable after judicial scrutiny runs counter to FLSA's provisions for compensating the wronged employee. *See United Slate, Tile & Composition Roofers*

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

> *v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 504 (6th Cir. 1984) ("the determination of a reasonable fee is to be conducted by the district court regardless of any contract between plaintiff and plaintiff's counsel"); *see also Zegers v. Countrywide Mortg. Ventures, LLC*, 569 F. Supp. 2d 1259 (M.D. Fla. 2008).

*Id.* at 351-52.[3] For the Court to determine whether the proposed settlement is reasonable, counsel for the claimant must first disclose the extent to which the FLSA claim has or will be compromised by the deduction of attorney's fees, costs or expenses pursuant to a contract between the plaintiff and his counsel, or otherwise. *Id.* When a plaintiff receives less than a full recovery, any payment (whether or not agreed to by a defendant) above a reasonable fee improperly detracts from the plaintiff's recovery.[4] Thus, a potential conflict can arise between counsel and their client regarding how much of the plaintiff's total recovery should be allocated to attorney's fees and costs.[5] It is the Court's responsibility to ensure that any such allocation is reasonable. *See Silva*, 307 F. App'x at 351-52. As the Court interprets *Lynn's Food* and *Silva*, where there is a compromise of the amount due to the plaintiff, the Court should decide the reasonableness of the attorney's fees provision under the parties' settlement agreement using the lodestar method as a guide. In such a case, any compensation for attorney's fees beyond that justified by the lodestar method is unreasonable unless exceptional circumstances would justify such an award.

An alternate means of demonstrating the reasonableness of attorney's fees and costs was set forth in *Bonetti v. Embarq Management Co.*, 715 F. Supp. 2d 1222 (M.D. Fla. 2009). In *Bonetti*, the Honorable Gregory A. Presnell held:

---

[3] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

[4] From a purely economic standpoint, defendants are largely indifferent as to how their settlement proceeds are divided as between plaintiffs and their counsel. Where a plaintiff is receiving less than full compensation, payment of fees necessarily reduces the plaintiff's potential recovery.

[5] This potential conflict is exacerbated in cases where the defendant makes a lump sum offer which is less than full compensation, because any allocation between fees and the client's recovery could become somewhat arbitrary.

> In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) *represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.*

*Id.* at 1228 (emphasis added). Judge Presnell maintained that if the matter of attorney's fees is "addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement." *Id.* The undersigned finds this reasoning persuasive.

### III. ANALYSIS.

#### A. Settlement Amount.

This case involves disputed issues of FLSA liability, which constitutes a bona fide dispute. Doc. No. 40 at ¶¶ 5, 11. The parties are represented by independent counsel. *Id.* at ¶ 20. Under the Agreement, Plaintiffs are receiving the following amounts as unpaid wages and liquidated damages:

| Plaintiff | unpaid wages | liquidated damages |
| --- | --- | --- |
| Freddie Mungen | $5,800.00 | $5,800.00 |
| Kevin Berrios | $1,087.50 | $1,087.50 |
| Christian Mattila | $2,175.00 | $2,175.00 |

Doc. No. 40-1 at 2.[6] In the answers to court interrogatories, Mungen claimed he was owed the total amount of $19,591 in unpaid wages and an equal amount in liquidated damages, Doc. No. 16 at 3, and Berrios claimed that he was owed $3,094.80 in unpaid wages and an equal amount in liquidated damages, Doc. No. 17 at 3. Mattila did not file answers to the court's interrogatories, but in the Motion, his unpaid overtime claim is calculated using a half-time rate of approximately $5.92 per hour, resulting in a claim of approximately $1,598.40 in unpaid wages and an equal amount in liquidated damages.[7] Doc. No. 40 at ¶ 14. Also in the Motion, the parties calculate Mungen's and Berrios's claims using the half-time rate, asserting that "Mungen's unpaid overtime would equal approximately $5,198.16, and $10,396.32 liquidated[,]" and Berrios's "unpaid overtime would equal approximately $878.40, and $1,756.80 liquidated." *Id.* at ¶¶ 12, 13. The parties state, "Each of the three Plaintiffs received a monetary recovery greater than the liquidated *one-half rate* method of calculation for their claimed unpaid overtime hours respectively." *Id.* at ¶ 16 (emphasis added). The parties do not explain why they are using the half-time rate, especially in light of Mungen's and Berrios's answers to interrogatories, wherein they used the time-and-a-half rate. Doc. No. 16 at 3; Doc. No. 17 at 3.

Since Mungen and Berrios are receiving less than the amounts they claimed in their answers to the court's interrogatories, they may have compromised their claims under the FLSA.

---

[6] Plaintiffs' total recovery is $18,125. Doc. No. 40-1 at 2.

[7] The "half-time rate" is calculated "by dividing the number of hours actually worked by the weekly wage." *Torres v. Bacardi Glob. Brands Promotions, Inc.*, 482 F. Supp. 2d 1379, 1380–81 (S.D. Fla. 2007). Then, under the theory that the "employee who receives a weekly salary for all hours worked has, by definition, already been paid his 'regular rate' for all hours worked in the workweek . . . [the] salaried employee is only owed half-time for any hours worked in excess of forty per workweek." *Id.* For example, in the Motion, the parties assert that Mattila's salary was $40,000, and he worked approximately sixty-five hours per week while employed as a Recruiter for Defendant. Doc. No. 40 at ¶ 14. Dividing $40,000 by 52 weeks equals a weekly salary of $769.23. Dividing $769.23 by the sixty-five hours worked per week equals an hourly "regular rate" of $11.83. Half of $11.83 equals $5.92, which is what the parties assert is Mattila's half-time rate. *Id.*

*See Caseres v. Texas de Brazil (Orlando) Corp.*, 6:13-cv-1001-Orl-37KRS, 2014 WL 12617465, at *2 (M.D. Fla. April. 2, 2014) ("Because [plaintiff] will receive under the settlement agreement less than she averred she was owed under the FLSA, she has compromised her claim within the meaning of *Lynn's Food Stores*."). The case involves disputed issues regarding FLSA liability, which constitutes a bona fide dispute. Doc. No. 40 at ¶¶ 5, 11. After receiving sufficient information to make informed decisions, the parties decided to settle their dispute. *Id.* at ¶¶ 7, 8. Considering the foregoing, and the strong presumption favoring settlement, even if Mungen and Berrios compromised their claims, the settlement amount is fair and reasonable.

### B.  Attorney's Fees and Costs.

Under the Agreement, Plaintiff's counsel will receive $19,625.00 in attorney's fees and costs. Doc. No. 40-1 at 2. The parties represent that attorney's fees and costs were negotiated separately from Plaintiffs' recovery. Doc. No. 40 at ¶ 21. The settlement is reasonable on its face, and the parties' representation adequately establishes that the issue of attorney's fees and costs was agreed upon separately and without regard to the amount paid to Plaintiffs. *See Bonetti*, 715 F. Supp. 2d at 1228. Pursuant to *Bonetti*, the Agreement is a fair and reasonable settlement of Plaintiffs' FLSA claims.

### C.  No-Future-Employment Clause.

The Agreement contains a no-future-employment clause, in which Plaintiffs agree that they "will not knowingly seek or accept future employment with Employer or Employer's parents, subsidiaries, and other corporate affiliates or with any successor or assign." Doc. No. 40-1 at 3. No-future-employment clauses are different from general releases, in that the plaintiffs, as former employees of the defendants, know exactly what they are relinquishing when they agree not to seek future employment with the defendants. There is no indication that the clause undermines the

fairness of the Agreement. Additionally, in the Motion, the parties assert that Plaintiffs "do not wish to seek future employment with Defendant." Doc. No. 40 at ¶ 17. The no-future-employment clause does not preclude approval of the Agreement. *See generally Robertson v. Ther-RX Corp.*, No. 2:09cv1010–MHT (WO), 2011 WL 1810193, at *2 (M.D. Ala. May 12, 2011) (finding no-future-employment clause in FLSA settlement agreement inconsequential where plaintiffs did not want to work for defendants again and "because the future financial viability of this corporation is quite precarious, future employment is far from assured for anyone.").

### IV.  CONCLUSION.

Accordingly, it is **RECOMMENDED** that the Court enter an order as follows:

1. **GRANTING** the Motion (Doc. No. 40); and
2. **DISMISSING the case with prejudice**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal. **If the parties have no objection to this Report and Recommendation, they may promptly file a joint notice of no objection in order to expedite the final disposition of this case.**

Recommended in Orlando, Florida, on April 6, 2018.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties